# Supreme Court of the United States

Automotive Body Parts Association
     (Petitioner)

              v.                      No. 15-1314

United States District Court for the Eastern District of Michigan, et al.
     (Respondent)

To _____ Counsel for Respondent:

     **NOTICE IS HEREBY GIVEN** pursuant to Rule 12.3 that a petition for a writ of certiorari in the above-entitled case was filed in the Supreme Court of the United States on April 21, 2016, and placed on the docket April 26, 2016. Pursuant to Rule 15.3, the due date for a brief in opposition is Thursday, May 26, 2016. If the due date is a Saturday, Sunday, or federal legal holiday, the brief is due on the next day that is not a Saturday, Sunday or federal legal holiday.

     Unless the Solicitor General of the United States represents the respondent, a waiver form is enclosed and should be sent to the Clerk only in the event you do not intend to file a response to the petition.

     Only counsel of record will receive notification of the Court's action in this case. Counsel of record must be a member of the Bar of this Court.

                          Mr. Robert G. Oake, Jr.
                          Oake Law Office
                          825 Market Street
                          Suite 250
                          Allen, TX 75013
                          (214) 207-9066

NOTE: This notice is for notification purposes only, and neither the original nor a copy should be filed in the Supreme Court.

# W A I V E R

## Supreme Court of the United States

### No. 15-1314

Automotive Body Parts Association     v.     United States District Court for the
Eastern District of Michigan, et al.

(Petitioner)                         (Respondents)

**I DO NOT INTEND TO FILE A RESPONSE** to the petition for a writ of certiorari unless one is requested by the Court.

Please check the appropriate boxes:

☐ Please enter my appearance as Counsel of Record for all respondents.

☐ There are multiple respondents, and I do not represent all respondents. Please enter my appearance as Counsel of Record for the following respondent(s):

_____

_____

☐ I am a member of the Bar of the Supreme Court of the United States.

☐ I am not presently a member of the Bar of this Court. Should a response be requested, the response will be filed by a Bar member.

Signature _____

Date: _____

(Type or print) Name _____
           ☐ Mr.      ☐ Ms.      ☐ Mrs.      ☐ Miss

Firm _____

Address_____

City & State_____ Zip _____

Phone _____

SEND A COPY OF THIS FORM TO PETITIONER'S COUNSEL OR TO PETITIONER IF *PRO SE*. PLEASE INDICATE BELOW THE NAME(S) OF THE RECIPIENT(S) OF A COPY OF THIS FORM. NO ADDITIONAL CERTIFICATE OF SERVICE IS REQUIRED.

Cc:

Obtain status of case on the docket. By phone at 202-479-3034 or via the internet at http://www.supremecourtus.gov. Have the Supreme Court docket number available.

IN THE

# Supreme Court of the United States

———

AUTOMOTIVE BODY PARTS ASSOCIATION, PETITIONER

*v.*

FORD GLOBAL TECHNOLOGIES, LLC

———

*PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE FEDERAL CIRCUIT*

———

## PETITION FOR WRIT OF CERTIORARI

———

ROBERT G. OAKE, JR.
*Counsel of Record*

*Oake Law Office*
*825 Market Street*
*Suite 250*
*Allen, Texas 75013*
*rgo@oake.com*
*(214) 207-9066*

*i*

**QUESTION PRESENTED**

Whether a court order can be amended under Federal Rule of Civil Procedure 60(a) based solely on the issuing judge's subsequent statement of intent when there is no contemporaneous record evidence or other circumstance supporting the issuing judge's subsequent statement of intent and a party's reliance interests are adversely affected by the amendment.

*ii*

**RULE 29.6**

Petitioner Automotive Body Parts Association has no parent corporations, and there are no publicly held companies that hold 10% or more of petitioner's stock.

*iii*

## TABLE OF CONTENTS

Page

QUESTION PRESENTED...................................................... i

RULE 29.6 ............................................................................ ii

TABLE OF AUTHORITIES ................................................ iv

OPINIONS BELOW............................................................ 1

JURISDICTION................................................................... 1

RELEVANT PROVISIONS INVOLVED ........................... 2

STATEMENT ....................................................................... 3

REASONS FOR GRANTING THE PETITION ............... 10

CONCLUSION ................................................................... 18

APPENDIX
  *Circuit Court Order* .................................................... 1a
  *District Court Order (8/17/2015)* ............................. 5a
  *District Court Order (7/6/2015)* ............................. 13a
  *District Court Order (4/2/2015)* ............................. 15a
  *District Court Order (1/7/2015)* ............................. 22a
  *Order Denying Rehearing* ........................................ 39a
  *Declaration of Robert G. Oake* ............................... 41a

*iv*

## TABLE OF AUTHORITIES

Page

CASES

AMERICAN TRUCKING ASSOCIATIONS V. FRISCO
  TRANSPORTATION COMPANY RAILWAY LABOR
  EXECUTIVES ASSOCIATION, 358 U.S. 133, 145 (1958) ....... 10
ASSOCIATION FOR MOLECULAR PATHOLOGY V. USPTO, 653
  F.3D 1329, 1308 (FED. CIR. 2011) ............................. 5
ASSOCIATION FOR MOLECULAR PATHOLOGY V. USPTO, 669
  F. SUPP.2D 365 (S.D.N.Y. 2009) ................................ 4
DAWSON V. MARSHALL, 561 F.3D 930, 934 (9TH CIR. 2009) ... 7
DURA-WOOD TREATING CO. V. CENTURY FOREST INDUS.,
  INC., 694 F.2D 112, 114 (5TH CIR.1982) ..................... 11
FRISCO TRANSPORTATION COMPANY INTERSTATE
  COMMERCE COMMISSION V. FRISCO TRANSPORTATION
  COMPANY, 358 U.S. 133, 145 (1958) .......................... 10
IN RE BESTWAY PRODUCTS, INC., 151 B.R. 530, 534 (BANKR.
  E.D. CAL. 1993) ....................................................... 15
IN RE GALIARDI, 745 F.2D 335, 337 (5TH CIR.1984) (PER
  CURIAM) .................................................................. 15
IN RE JEE, 799 F.2D 532, 535 (9TH CIR. 1986) .............. 10, 12
IN RE TRANS UNION CORP. PRIVACY LITIG., 741 F.3D 811,
  816 (7TH CIR., 2014) ................................................ 15
LANDS V. ST. LOUIS RAILROAD CO., 648 F. SUPP. 322, 325
  (E.D. TEX., 1986) ..................................................... 6
MACK TRUCKS, INC. V. INT'L. UNION, UAW, 856 F.2D 579,
  594 N. 16 (3D CIR. 1988) .......................................... 12
MENDEZ V. REPUBLIC BANK, 725 F.3D 651, 663 (7TH
  CIR.2013) ................................................................ 15
PFIZER INC. V. UPRICHARD, 422 F.3D 124, 129-30 (3D CIR.
  2005) ...................................................................... 11
PRESIDENTIAL ESTATES APARTMENT ASSOCIATES V.
  BARRETT, 917 P.2D 100 (WASH. 1996) ...................... 13
SARTIN V. MCNAIR LAW FIRM PA, 756 F.3D 259, 266 (4TH
  CIR. 2014) .......................................................... 10, 12
TECHSHELL, INC. V. INCASE DESIGNS CORP., 2012 WL
  692295, AT *3-4 (N.D. CAL. MAR. 2, 2012) .................. 16

*v*

U.S. v. JORDAN, 49 F.3D 152 (5TH CIR. 1995) ........................... 7

**STATUTES**

28 U.S.C. § 1254(1) ...................................................... 2
28 U.S.C. § 636(b)(1)(C) .............................................. 6
49 U.S.C. § 17(3) ...................................................... 11

**RULES**

Federal Rule of Civil Procedure 1 ....................................... 2, 17
Federal Rule of Civil Procedure 60 ........................................ 2
Federal Rule of Civil Procedure 60(a) ...................... 10, 13, 14

1

**OPINIONS BELOW**

The Federal Circuit opinion and order denying the petition for writ of mandamus is unpublished and is reprinted at App. 1a-4a. The order denying the combined petition for panel rehearing and rehearing en banc is reprinted at App. 39a, 40a.

The Eastern District of Michigan (EDMI) district court's opinion and order denying plaintiff's motion to retransfer is unpublished and is reprinted at App. 5a-12a. The EDMI district court's opinion and order denying motion to decline jurisdiction is unpublished and is reprinted at App. 13a, 14a.

The Eastern District of Texas (EDTX) district court's memorandum opinion and order denying Motion to Re-Transfer Case and/or Court File, Plaintiff's Sealed Motion for Reconsideration of Order of Transfer, Plaintiff's Motion for Reconsideration of Order Denying as Moot Plaintiff's Motion to Supplement Evidence, Plaintiff's Motion to Vacate Order of Transfer, and Plaintiff's Second Motion for Reconsideration of Order of Transfer and Order Denying as Moot Plaintiff's Motion to Supplement Evidence is unpublished and is reprinted at App. 15a-21a. The EDTX district court's memorandum opinion and order granting defendant's motion to transfer venue is unpublished and is reprinted at App. 22a-38a.

**JURISDICTION**

The order of the Federal Circuit denying the petition for writ of mandamus was entered on November 17, 2015. Petitioners timely filed a combined

2

petition for rehearing and rehearing en banc, which was denied on January 22, 2016. The Petition for Writ of Certiorari is due on April 21, 2016. This Court has jurisdiction under 28 U.S.C. § 1254(1).

**RELEVANT PROVISIONS INVOLVED**

Federal Rule of Civil Procedure 1. Scope and Purpose

These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.

Federal Rule of Civil Procedure 60. Relief from a Judgment or Order

(a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

Local Rule CV-83 Rules by District Courts; Judge's Directives

(b) Transferred or Remanded Cases. Absent an order of the court to the contrary, no sooner than the twenty-first day following an order of the court transferring the case to another district court or remanding it to the appropriate state court, the clerk shall transmit the case file to the directed court. Where a case has been remanded to state court, the clerk shall mail:

(1) a certified copy of the court's order and docket sheet directing such action; and (2) all pleadings and other documents on file in the case. Where a case has been transferred to another federal district court, the electronic case file shall be transferred to the directed court. If a timely motion or reconsideration of the order of transfer or remand has been filed, the clerk shall delay mailing or transferring the file until the court has ruled on the motion for reconsideration.

## STATEMENT

Following a putative order of transfer (38a), the district court clerk in the Eastern District of Texas (EDTX) prematurely and wrongly transferred this design patent case to the Eastern District of Michigan (EDMI) in violation of EDTX Local Rule CV-83(b). The EDTX district court denied a motion to retransfer the case back to the EDTX (20a), ruling in part that its order of transfer directed the clerk to transfer the case *immediately* to the EDMI (19a). The transfer order did not state "immediately," "forthwith," and did not contain any other temporal indication that the case should be

transferred in any manner contrary to the requirement in the local rule that the case should not be transferred sooner than the twenty-first day following the putative order of transfer (38a).

The EDMI district court denied a motion to transfer the case back to the EDTX, ruling in part that even though the transfer order did not state "immediately," the transferee court could amend the original transfer order under Rule 60(a) to reflect the transferor court's alleged intent (14a) (even though there was no contemporaneous evidence of such intent in the record and petitioner had relied upon the absence of the word "immediately" in the original order). Petitioner Automotive Body Parts Association (ABPA) filed a petition for writ of mandamus in the United States Court of Appeals for the Federal Circuit (Federal Circuit), which denied the petition based in part on its interpretation of Rule 60(a) (3a, 4a). ABPA now files this petition asking this Court to correctly interpret Rule 60(a) and to direct the Federal Circuit to reconsider the petition for writ of mandamus in light of a correct interpretation of Rule 60(a).

ABPA[1] originally brought this case based on associational standing[2] seeking a declaration that Ford

---

[1] ABPA is a non-profit corporation organized and existing under the laws of the State of Texas with a principal office in Houston, Texas. ABPA members distribute automotive aftermarket repair parts.

[2] This appears to be the first patent case involving contested associational standing. One previous case, *Association for Molecular Pathology v. USPTO*, 669 F. Supp.2d 365 (S.D.N.Y. 2009), *affirmed in part and reversed in part, Association for Molecular Pathology v. USPTO*, 653 F.3d 1329, 1308 (Fed. Cir.

Global Technologies LLC (FGTL)[3] design patents are invalid and unenforceable under the doctrines of functionality and patent exhaustion, and that as a result ABPA members do not infringe the patents. FGTL filed a motion to dismiss arguing that associational standing did not exist, which was denied.

FGTL filed a motion to transfer venue and the magistrate judge signed a report and recommendation ("R&R") that recommended the motion to transfer venue of FGTL be granted. ABPA timely served objections to the R&R[4] and filed a Motion to

Supplement Evidence.[5] The magistrate judge then received a commission as a United States district court judge and granted the motion to transfer venue on January 7, 2015. The order did not review or address any ABPA objections to the R&R and did not mention that a review was conducted. The court ruled that the motion to consider additional evidence was moot.

On January 14, 2015, the papers of this case were transferred from the EDTX to the EDMI in violation of EDTX Rule CV-83(b), which provides in relevant part "[a]bsent an order of the court to the contrary, no sooner than the twenty-first day following an order of the court transferring the case to another district court or remanding it to the appropriate state court, the clerk shall transmit the case file to the directed court." The purpose of the local rule is to provide a reasonable amount of time to file a motion for reconsideration or other appropriate motions before the transferor court loses jurisdiction under the rule that "jurisdiction follows the file."[6] Although the transfer order was entered on January 8, 2015 (16a, 17a), and there was no "order of the court to the contrary," the case was transferred on January 14, 2015, just six days after the

---

2011), *rev'd in part on other grounds*, 133 S. Ct. 2107, involved an assertion of associational standing that was neither contested, analyzed, nor ruled upon.

[3] FGTL is a corporation organized and existing under the laws of the State of Delaware and is a wholly owned subsidiary of Ford Motor Company. FGTL is the owner of the two design patents at issue in this case (D489299 (Exterior of Vehicle Hood) and D501685 (Vehicle Head Lamp)).

[4] The objections were filed under seal. ABPA objected to the findings in the R&R (1) that the "local interest" factor favors transfer, (2) that the "relative ease of access to sources of proof" factor favors transfer, (3) that the "cost of attendance for willing witnesses" weighs slightly in favor of transfer, and (4) that "Ford has met its burden to demonstrate that the Eastern District of Michigan is clearly more convenient than the current forum for this litigation." Perhaps because this is the first case based on contested associational standing, the district court failed to consider the inconvenience to ABPA's witnesses, reasoning that "[t]he ABPA does not share this concern [of business disruption], as it is an association composed of members, including New World, and it does not make, manufacture, or sell any products." (36a). This was clear error because ABPA witnesses have regular employment and personal lives aside from the involvement in the ABPA. The R&R also contains clear error because it, *inter alia*, fails to consider the evidence and witnesses in <u>and near</u> the EDTX.

[5] The motion to supplement evidence requested the court to consider eight declarations, three emails, a deposition excerpt, and additional documents pursuant to 28 U.S.C. § 636(b)(1)(C). The reasons that the evidence had not been submitted earlier were that (1) pleadings were amended after venue briefing was complete, (2) the court's clearly erroneous recommendation that failed to consider evidence and witnesses in and near the EDTX, and (3) the court's clearly erroneous recommendation that failed to consider the inconvenience to ABPA's witnesses.

[6] The rule is designed to prevent the jurisdictional problem presented in cases such as *Lands v. St. Louis Railroad Co.*, 648 F. Supp. 322, 325 (E.D. Tex., 1986).

transfer order was entered (17a). On January 20, 2015, ABPA moved to disqualify the judge from ruling on the Motion to Transfer Venue and moved to retransfer this case back to the EDTX.[7]

On January 28, 2015, ABPA filed a motion for reconsideration of order of transfer. On January 29, 2015, ABPA filed a motion for reconsideration of order denying as moot plaintiff's motion to supplement evidence On February 4, 2015, ABPA filed a motion to vacate order of transfer. Also on February 4, 2015, ABPA filed second motions for reconsideration of order of transfer and order denying as moot plaintiff's motion to supplement evidence.

On March 24, 2015, the district judge denied ABPA's motion to disqualify.[8] On April 2, 2015, the

_____

[7] The motion to disqualify challenges whether a district judge can provide a de novo review of his own R&R issued when he was a magistrate judge. *Dawson v. Marshall*, 561 F.3d 930, 934 (9th Cir. 2009) and *Frye v. Warden*, No. Civ. S-99-0628 (Temp), (E.D. Ca. Jan. 14, 2011) both indicate that this situation creates an appearance of impropriety, and U.S. v. Jordan, 49 F.3d 152 (5th Cir. 1995) addresses when an appearance of impropriety should disqualify a judge. Shaun P. Martin, Professor of Law, JD, 1991, Harvard University, AB, 1988, Dartmouth College, with an area of expertise in professional ethics and responsibility, concludes his comment on the Dawson case by stating "[t]he district judge and the magistrate being reviewed should not be the same person. Period." http://calapp.blogspot.com/2009/02/dawson-v-marshall-9th-cir-feb-9-2009.html.

[8] Although the district court judge denied numerous motions on the basis that he no longer had jurisdiction of the case once it was transferred, the district court judge substantively ruled on the motion to disqualify. The order does not address the Fifth Circuit case law on when an appearance of impropriety should lead to a disqualification.

district judge denied (i) ABPA's motion to retransfer case and/or court file back to the Eastern District of Texas, (ii) sealed motion for reconsideration of order of transfer, (iii) motion for reconsideration of order denying as moot plaintiff's motion to supplement evidence, (iv) motion to vacate order of transfer, and (v) second motions for reconsideration of order of transfer and order denying as moot plaintiff's motion to supplement evidence, reasoning that the court did not have jurisdiction over the motions since the case had been transferred. (20a, 21a).

The district judge's April 2, 2015 order states that "[ABPA's] reliance on the local rule was misguided, as the undersigned's Memorandum Opinion and Order concludes (sic [includes]) just such an order, directing the Clerk to transfer this case *immediately* to the United States District Court for the Eastern District of Michigan." (emphasis added) (19a, 20a). However, the word "immediately" is not in the transfer order and there is no contemporaneous evidence in the record that transfer should be immediate. The premature transfer denied ABPA an opportunity to obtain substantive rulings on motions that pointed out the multiple clear errors in the transfer order and procedure and that were filed in the transferor court after the case file was transferred on January 14, 2015.

ABPA then sought relief in the transferee court by filing a motion requesting that the court decline jurisdiction of the case based on the premature and void transfer. The transferee court denied the motion reasoning that the court was bound by the transferor court's order denying retransfer under the "law of the case" doctrine, or alternatively that even though the

transfer order did not state "immediately," the transferee court could amend the original transfer order under Rule 60(a) to reflect the transferor court's alleged intent (14a) (even though there was no contemporaneous evidence of such intent in the record and ABPA had relied upon the absence of the word "immediately" in the original order). The court further stated "ABPA is granted leave to file, within 14 days, a motion to retransfer or writ of mandamus." (14a).

ABPA then filed a motion to retransfer so the Federal Circuit would have an order denying retransfer to review on petition for writ of mandamus.[9] The transferee court denied the motion to retransfer and stated "[t]he Court will not entertain any further motions on the propriety of the case being transferred to the Eastern District of Michigan" and "[i]f ABPA continues to believe that this case should not be here, its recourse is in the Federal Circuit Court of Appeals." (12a).

ABPA then filed a petition for writ of mandamus requesting the United States Court of Appeals for the Federal Circuit to direct the EDMI court to retransfer the case because the original case transfer violated EDTX Local Rule CV-83(b). The Federal Circuit denied the petition for writ of mandamus (4a), stating in part as follows:

---

[9]  *See In re Rothman*, 2014-110 (Fed. Cir., March 19, 2014) (non-precedential) (Court denied petition for writ of mandamus without prejudice when district court had not yet ruled on a transferred motion to quash).

ABPA has no clear right to retransfer. A judge's subsequent statements may help illuminate the actual intent behind an issued order. *See e.g.*, *Sartin v. McNair Law Firm PA*, 756 F.3d 259, 266 (4th Cir. 2014); *In re Jee*, 799 F.2d 532, 535 (9th Cir. 1986). The Texas court's statements in its denial of reconsideration were clearly probative, and the Michigan court found that those statements were the best indication of the meaning behind the directive to the Clerk in the January 7, 2015 order. We decline to second guess the court's determination on mandamus.

(3a).   ABPA filed a combined petition for rehearing and rehearing en banc, which was denied on January 22, 2016. (39a, 40a). This petition followed.

**REASONS FOR GRANTING THE PETITION**

This case presents an opportunity for this Court to clarify when an order or judgment may be amended under Federal Rule of Civil Procedure 60(a) and to resolve a circuit split created by the Federal Circuit in this case regarding the proper interpretation of Rule 60(a).

Rule 60(a) provides in relevant part "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." In *American Trucking Associations v. Frisco Transportation Company Railway Labor Executives Association v. Frisco Transportation Company Interstate Commerce Commission v. Frisco Transportation Company*, 358 U.S. 133, 145 (1958) this

Court stated "[o]f course, the power to correct inadvertent ministerial errors [under Rule 60(a) and 49 U.S.C. § 17(3)] may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful in the light of changing policies." However, this Court has not otherwise provided guidance on when a court may correct "a mistake arising from oversight or omission" under Rule 60(a).

The Federal Circuit's interpretation of Rule 60(a) allows a district court to amend an order based solely on the court's subsequent statement that the court intended its order to state something other than what the order actually stated. This interpretation of Rule 60(a) does not require contemporaneous record evidence or other circumstances to corroborate the amendment, and does not require consideration of whether a litigant's reliance interests on the language of the original order are adversely affected.

The Federal Circuit's interpretation of Rule 60(a) is in conflict with the decisions of other circuit courts of appeal that require the record to make apparent that the court intended one thing but by mistake did another. *See, e.g., Dura-Wood Treating Co. v. Century Forest Indus., Inc.*, 694 F.2d 112, 114 (5th Cir.1982) ("Rule 60(a) finds application where *the record makes apparent* that the court intended one thing but by merely clerical mistake or oversight did another. Such a mistake must not be one of judgment or even of misidentification, but merely of recitation, ... mechanical in nature.") (emphasis added); *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 129-30 (3d Cir. 2005) (The rule is "limited to the correction of 'clerical mistakes'; it encompasses

only errors 'mechanical in nature, *apparent on the record*, and not involving an error of substantive judgment.'" (emphasis added) (quoting *Mack Trucks, Inc. v. Int'l. Union, UAW*, 856 F.2d 579, 594 n. 16 (3d Cir. 1988)).

The Federal Circuit's opinion states "a judge's subsequent statements may help illuminate the actual intent behind an issued order." (3a). However, in both cases cited in support of that statement, the judges' subsequent statements of intent also were supported by contemporaneous record evidence or other circumstance. *See Sartin v. McNair Law Firm PA*, 756 F.3d 259, 266 (4th Cir. 2014) ("the district court's intent at the time it issued the sanctions orders was manifested both by what the court later stated about its intent and by contemporaneous documents."); *In re Jee*, 799 F.2d 532, 535 (9th Cir. 1986) ("Judge Ordin's own recollections, combined with the circumstances surrounding the decision to dismiss, support the finding that Judge Ordin originally intended the dismissal to be without prejudice."). Further, no reliance interests were involved in either case.

ABPA has not been able to locate a single case (other than the instant case) where amendment of a court order was permitted under Rule 60(a) based solely on the issuing judge's subsequent statement of intent when there was no contemporaneous record evidence or other circumstance supporting the issuing judge's subsequent statement of intent and a party's reliance interests were adversely affected by the amendment.

In *Presidential Estates Apartment Associates v. Barrett*, 917 P.2d 100 (Wash. 1996), the Supreme Court of Washington sitting *en banc* interpreted a state rule of civil procedure similar to Federal Rule of Civil Procedure 60(a). The court held the trial court abused its discretion when amending the judgment. The court's analysis focused on "whether the judgment, as amended, embodies the trial court's intention, as expressed in the record at trial." The court stated:

> If the answer to that question is yes, it logically follows that the error is clerical in that the amended judgment merely corrects language that did not correctly convey the intention of the court, or supplies language that was inadvertently omitted from the original judgment. If the answer to that question is no, however, the error is not clerical, and, therefore, must be judicial. Thus, even though a trial court has the power to enter a judgment that differs from its oral ruling, once it enters a written judgment, it cannot, under CR 60(a), go back, rethink the case, and enter an amended judgment that does not find support in the trial court record. [footnote omitted].

*Id.* at 104.

The court held the amendment was improper "because there is nothing in the record of the trial to support the contention that the trial court unintentionally failed to put in the judgment [the provision added in the amended judgment]." *Id.* "Conversely, and significantly, there is much in the

record indicating that the trial court harbored the opposite intention." *Id.* [10]

This Court should interpret Federal Rule of Civil Procedure 60(a) in a similar way. Unless there is support in the record for the amendment, a court should not be able to amend an order under Rule 60(a). In the instant case, there is nothing in the trial court record supporting the conclusion that the trial court intended for the clerk to transfer the case immediately. Indeed, the record is to the contrary. The clerk described the order as being premature. (4:13-cv-00705; Doc. 94-1) (41a, 42a). Further, the conclusion that the EDTX district judge did not contemporaneously intend this case to be immediately transferred is supported by the court asserting jurisdiction over this case and issuing two orders since the putative transfer took

---

[10] In *Presidential Estates*, the Court stated:

> In affirming the Court of Appeals, we acknowledge that the trial court may have sincerely believed that the additional relief it provided in the amended judgment could be implied from the spirit of the equitable remedy that it had crafted in the original judgment. In the absence of any expression in the trial record showing that the trial court intended at the time the original judgment was entered to grant that additional relief, however, there is simply no basis upon which this, or any reviewing court, can possibly fit the correction within the scope of CR 60(a).

917 P.2d 104, 105. Similarly, in the instant case, the trial court may have sincerely intended that the case transfer be done immediately. However, in the absence of any support in the record that the trial court intended at the time the original order was entered to transfer the case immediately, there is no basis upon which any reviewing court can possibly fit the correction within the scope of a properly interpreted Rule 60(a).

place on January 14, 2015. These were the Order vacating scheduling order deadlines (4:13-cv-00705; Doc. 68) and the Order Denying Motion to Disqualify Judge (4:13-cv-00705; Doc. 92).

Additionally, it is not appropriate to rely upon a court's uncorroborated subsequent statement of intent when a party's reliance interests are involved and are adversely affected. When reliance interests are involved, a party should be able to rely on the plain text of an order without the need to investigate the judge's intent, and appellate courts should interpret an order in the same manner. *See In re Trans Union Corp. Privacy Litig.*, 741 F.3d 811, 816 (7th Cir. 2014) ("Litigants as well as third parties must be able to rely on the clear meaning of court orders setting out their substantive rights and obligations, and appellate courts should interpret those orders in the same manner. [citing] *Mendez v. Republic Bank*, 725 F.3d 651, 663 (7th Cir.2013) ("It is not reasonable to expect a third-party citation respondent to investigate the intended meaning of a court order beyond the text of the order itself."); *In re Bestway Products, Inc.*, 151 B.R. 530, 534 (Bankr. E.D. Cal. 1993) ("The one limitation on correcting an error under Rule 60(a) is that reliance on the erroneous judgment can lead to changes in position that are so substantial as to make it inequitable to grant relief."); *See also In re Galiardi*, 745 F.2d 335, 337 (5th Cir.1984) (per curiam) (Rule 60(a) "does not grant a district court carte blanche to supplement by amendment an earlier order by what is subsequently claimed to be an oversight or omission.").

If an amendment under Rule 60(a) can be based solely on the issuing judge's subsequent statement of

intent when there is no contemporaneous record evidence or other circumstance supporting the issuing judge's subsequent statement of intent and a party's reliance interests are adversely affected by the amendment, then the plain text of court orders becomes unreliable and unpredictable and the entire legal system is destabilized.[11]

The Federal Circuit erroneously concluded that ABPA did not lack a meaningful alternative legal remedy to obtain retransfer, stating "[t]he Michigan court gave ABPA an adequate opportunity to seek retransfer by challenging the merits of the transfer decision [and] ABPA simply elected to forgo that avenue of obtaining the relief it seeks." (3a).

The Federal Circuit's erroneous conclusion overlooks that if ABPA filed a motion in the Michigan court seeking a retransfer based on the substantive § 1404 factors, then as stated in *Techshell, Inc. v. Incase Designs Corp.*, 2012 WL 692295, at *3-4 (N.D. Cal. Mar. 2, 2012), ABPA would have to argue "changed circumstances," or meet a burden of the "most impelling and unusual circumstance." 2012 WL 692295 at *6. The

---

[11] The Federal Circuit's opinion states that ABPA "cannot ask for relief from the Texas court in seeking to have the transfer declared premature, and then credibly argue that the Texas court's reconsideration decision is a nullity after receiving an unfavorable ruling." (3a). The record and briefing indicate that ABPA initially filed its motions in the Texas Court only after the court clerk described the case transfer as "premature" and instructed ABPA to file the motions in the Texas Court. (4:13-cv-00705; Doc. 94-1) (41a, 42a). In any event, since an amendment under Rule 60(a) should not be based solely on the issuing judge's subsequent statement of intent, it is not relevant whether the subsequent statement of intent is a nullity.

17

previous rulings and non-rulings of the EDTX district court would receive a deference not appropriate under proper standards of review.

Further, EDTX Local Rule CV-83(b) would be rendered a worthless nullity and it would be as if ABPA never filed the objections to the R&R, the motion to supplement evidence, the motion to disqualify, the motion to vacate, the motion to retransfer, or any of the other motions ABPA filed that challenged the transfer decision and procedure. ABPA sought a writ of mandamus so the case file would be transferred back to the Texas court, jurisdiction would be clear in the Texas court over the motions that ABPA filed (described previously), and ABPA could obtain rulings on those motions under proper standards of review. ABPA does not wish to forfeit these motions or their proper review and have the transfer issue reviewed under an improper standard of review. The Federal Circuit's opinion overlooked and did not address any of these issues.

Finally, Federal Rule of Civil Procedure 1 states in relevant part that the Federal Rules of Civil procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." The Federal Circuit's interpretation of Rule 60(a) does not secure "just, speedy, and inexpensive" determinations.

It is not "just" to allow amendment of an order based solely on the issuing judge's subsequent statement of intent when the party affected already has detrimentally relied on the plain text appearing on the

18

face of the order. Speedy and inexpensive determinations will not result because if the plain text of court orders becomes unreliable and unpredictable, then litigants will need to file additional post-order motions seeking to clarify the underlying intent of the issuing judge and the type of confusion and delay that has occurred in this case will inevitably result as the entire legal system becomes destabilized.

## CONCLUSION

For the foregoing reasons, the petition for a writ of certiorari should be granted.

Respectfully submitted,
Robert G. Oake, Jr.
Counsel of Record
OAKE LAW OFFICE
825 Market Street, Suite 250
Allen, Texas 75013
 (214) 207-9066
rgo@oake.com

1a

11/17/2015
NOTE: This order is nonprecedential.

United States Court of Appeals for the Federal Circuit

In re: AUTOMOTIVE BODY PARTS ASSOCIATION, *Petitioner*

2015-156

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Michigan in No. 2:15-cv-10137-LJM-MJH, Judge Laurie J. Michelson.

ON PETITION

Before LOURIE, DYK, and HUGHES, *Circuit Judges.*
DYK, *Circuit Judge.*

ORDER

The Automotive Body Parts Association ("ABPA") brought the underlying action against Ford Global Technologies, LLC in the United States District Court for the Eastern District of Texas. On Ford's motion, the case was transferred to the United States District Court for the Eastern District of Michigan. After the Michigan court denied retransfer, ABPA filed this petition challenging the retransfer ruling, a challenge premised on the initial transfer being void under the Texas court's local rules.

Under applicable regional circuit law, we review a

2a

district court's decision to deny a motion to retransfer for abuse of discretion. *See Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). Moreover, ABPA is seeking mandamus relief, an extraordinary and drastic remedy that may only be granted upon a showing of a clear and indisputable right to relief. *See Kerr v. U.S. Dist. Court for N. D. of Cal.*, 426 U.S. 394, 402–03 (1976).

The Texas court's local rule in question, CV-83(b), provides, in relevant part, that "[a]bsent an order of the court to the contrary, no sooner than the twenty-first day following an order of the court transferring the case to another district court . . . the clerk shall transmit the case file to the directed court . . . If a timely motion for reconsideration . . . has been filed, the clerk shall delay mailing or transferring the file until the court has ruled[.]"

The Eastern District of Texas issued its order transferring the case on January 7, 2015. It concluded its transfer order by stating: "The Clerk is directed to transfer this case to the United States District Court for the Eastern District of Michigan." No motion for reconsideration having been filed, the Clerk, on January 14, 2015, mailed the Eastern District of Michigan a certified copy of the order and the original papers in the file.

Believing that the Clerk's failure to wait 21 days rendered the transfer void, ABPA sought reconsideration from the Texas court. The Texas court denied reconsideration, concluding the January 7, 2015 order directed the Clerk to act contrary to the usual rule and transfer immediately. ABPA then raised the same challenge before the Michigan court, which denied

3a

ABPA's motions to decline jurisdiction and retransfer, deferring to the Texas court's findings on CV-83(b) as the law of the case.

ABPA has no clear right to retransfer. A judge's subsequent statements may help illuminate the actual intent behind an issued order. *See e.g., Sartin v. McNair Firm PA*, 756 F.3d 259, 266 (4th Cir. 2014); *In re Jee*, 799 F.2d 532, 535 (9th Cir. 1986). The Texas court's statements in its denial of reconsideration were clearly probative, and the Michigan court found that those statements were the best indication of the meaning behind the directive to the Clerk in the January 7, 2015 order. We decline to second guess the court's determination on mandamus.

ABPA argues that the Texas court's interpretation should be given no weight because, at the time, that court had relinquished jurisdiction over the case. But ABPA cannot have it both ways. It cannot ask for relief from the Texas court in seeking to have the transfer declared premature, and then credibly argue that the Texas court's reconsideration decision is a nullity after receiving an unfavorable ruling.

Moreover, ABPA did not lack a "meaningful alternative legal remed[y]" to obtain retransfer. *Canadian Tarpoly Co. v. U.S. Int'l Trade Comm'n*, 640 F.2d 1322, 1325 (C.C.P.A. 1981). The Michigan court gave ABPA an adequate opportunity to seek retransfer by challenging the merits of the transfer decision. ABPA simply elected to forgo that avenue of obtaining the relief it seeks.

Accordingly,

4a

IT IS ORDERED THAT:

The petition is denied.

FOR THE COURT

/s/ Daniel E. O'Toole  Daniel E. O'Toole
Clerk of Court

5a

Case No. 2:15-cv-10137.

AUTOMOTIVE BODY PARTS ASSOCIATION, Plaintiff, v. FORD GLOBAL TECHNOLOGIES, LLC, Defendant.

United States District Court, E.D. Michigan, Southern Division.

August 17, 2015.

Automotive Body Parts Association, Plaintiff, represented by Robert Oake, Jr., Oake Law Office & Thomas G. Cardelli, Cardelli, Hebert,.
Ford Global Technologies, LLC, Defendant, represented by Frank A. Angileri, Brooks Kushman, Amy C. Leshan, Brooks Kushman, Linda D. Mettes, Brooks Kushman P.C. & Marc Lorelli, Brooks Kushman.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO RETRANSFER [23]

**LAURIE J. MICHELSON**, *District Judge*.

This patent case was filed in November 2013. Now approaching two years later, this case has not reached the merits as Automotive Body Parts Association continues to dispute which court should hear this case: this one or the federal district court in Texas where the case was filed.

About two months ago, ABPA filed a motion for this Court to decline jurisdiction over this case. (Dkt. 17.) ABPA's primary argument was that the clerks' office

6a

for the United States District Court for the Eastern District of Texas transferred the case to this judicial district too soon. To be more specific, only a week after United States District Judge Amos L. Mazzant's January 7, 2015 order "direct[ing] [the clerk] to transfer this case to the United States District Court for the Eastern District of Michigan," the clerks' office in Texas sent the case here. But a local rule in the Eastern District of Texas provides, "[a]bsent an order of the court to the contrary, no sooner than the *twenty-first day* following an order of the court transferring the case to another district court[,] . . . the clerk shall transmit the case file to the directed court." E.D. Tex. LR CV-83(b) (emphasis added).

Less than a month ago, the Court held a hearing on a related motion and, for reasons provided at great length on the record, denied ABPA's motion asking this Court to decline jurisdiction. (*See generally*, Dkt. 22, July 6, 2015 Hr'g Tr.) A written order summarizing this Court's oral ruling followed:

[T]his Court has jurisdiction over this case because (1) the case file has been transferred to this Court and Judge Amos L. Mazzant has declined jurisdiction; (2), in the first alternative, Judge Mazzant retained authority even after the file was transferred here to decide the limited issue of whether the transfer was premature, he ruled that the transfer was not premature, and the law-of-the-case doctrine justifies deferring to that finding; and (3), in the second alternative, this Court can sua sponte amend Judge Mazzant's January 2015 transfer order to reflect his intent at the time of the order under Rule 60(a) and his intent was for an immediate transfer as manifested in his April 2015 order.

7a

(Dkt. 21, July 6, 2015 Order Denying Pl.'s Mot. to Decline Jurisdiction at 1-2.) At the conclusion of the written order, this Court granted ABPA "leave to file, within 14 days, a motion to retransfer or writ of mandamus." (*Id.* at 2.)

ABPA has elected to try the former route first. (Dkt. 23, Pl.'s Mot. to Retransfer.) But its motion to retransfer is not directed to the reasoning of Judge Mazzant's January 7, 2015 transfer order. Nor does the motion focus on ABPA's assertion that it was improper for Judge Mazzant to adopt his own report and recommendation to transfer this case. (Judge Mazzant was the magistrate judge assigned this case prior to his elevation to a district judge.) Instead, ABPA's motion essentially asks this Court to reconsider its July 6, 2015 ruling.

In particular, ABPA says this Court twice erred. As to the first alternative ruling ("Judge Mazzant retained authority even after the file was transferred here to decide the limited issue of whether the transfer was premature, he ruled that the transfer was not premature, and the law-of-the-case doctrine justifies deferring to that finding"), ABPA says that this Court erred because (1) Judge Mazzant lost jurisdiction once the case was transferred here (i.e., the law says that jurisdiction follows the file) and (2) no deference is owed to Judge Mazzant's ruling that this case was not transferred prematurely as that determination was clearly erroneous. (Pl.'s Mot. to Retransfer ¶ 6.) As to the second alternative ruling ("this Court can sua sponte amend Judge Mazzant's January 2015 transfer order to reflect his intent at the time of the order under Rule 60(a) and his intent was for an immediate transfer

8a

as manifested in his April 2015 order"), APBA argues that this Court erred because a Rule 60(a) amendment of an order is improper where "it affects the substantive rights" of the parties. (*Id.* at ¶ 7.)

The Court does not appreciate ABPA asking for reconsideration under the guise of a motion for retransfer. In granting ABPA leave to file a motion to retransfer, the Court expected that ABPA would get to the merits of Judge Mazzant's January 7, 2015 transfer order, in particular, Judge Mazzant's assessment of the eight public and private interest factors informing his decision to transfer the case here.

Additionally, upon consideration of ABPA's motion to retransfer and the transcript of the July 6, 2015 hearing, the Court is convinced that its reasoning as stated withstands ABPA's challenges. *Cf.* E.D. Mich. LR 7.1(h)(3) ("Generally, and without restricting the Court's discretion, the Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case."). The Court thus does not find it productive to restate its July 6, 2015 ruling.

But the Court does take this opportunity to point out that ABPA's attack on this Court's second alternative ruling is not only unsupported by law, but that the Court already explained to ABPA why this is so. To be clear, ABPA's position is not that a transferor court

9a

cannot amend a transfer order under Federal Rule of Civil Procedure 60(a) to reflect the intent of the transferee court at the time that the transferee court issued its transfer order. (*See* Pl.'s Mot. to Retransfer at 7-9.) Instead, ABPA argues that this Court cannot amend Judge Mazzant's transfer order under Rule 60(a) to reflect his intent at the time he ordered transfer because the amendment would affect the "substantive rights of the ABPA." (Pl.'s Mot. to Retransfer ¶ 7; *see also id.* at 7 ("[A]n amendment cannot be made under Rule 60(a) because it affects the substantive rights of ABPA.") This Court anticipated and addressed this very argument when it ruled on July 6, 2015. In particular, this Court explained:

Although it has been said that, []if an error affects the substantive rights of the parties, it must be corrected under the provisions of Rule 60(b),[ Olle v. Henry & Wright Corp., 910 F.2d 357, 363 (6th Cir. 1990),] this statement should not be interpreted strictly literally. Consider this example[:] at oral argument on a motion to transfer, the district judge explains how every relevant consideration strongly favors transfer to the Western District of Michigan, but then when the judge goes to enter the corresponding order, he writes, quote, the clerk is directed to immediately transfer this case to the United States District Court for the Eastern District of Michigan, end quote, inadvertently substituting Easter[n] for Western. And so the same day as the order is entered, the clerk transfer[s] the case to Western District. This would be a clerical mistake within [Rule] 60(a)'s plain language, even if a correction of the order to reflect the judge's manifest intent at oral argument would substantially affect how the case would be litigated and thus, the substantive

10a

rights of the parties. More importantly, the Fifth Circuit, which the Sixth Circuit relied upon in Olle, has recently clarified this issue. In Rivera [v.] PNS Stores, Inc., the Fifth Circuit acknowledged the case law indicating that, quote, a judgment that affects the substantive rights of the parties is beyond the scope of Rule 60(a), end quote, but then explained, quote, the relevant inquiry under Rule 60(a) is not whether making the correction ha[s] any effect on the parties' rights and obligations under the judgment. Most of the time it will. Rather, the question is whether granting the motion would require the district court either to adjudicate an issue it has not previously reached or to make a substantive modification to a prior adjudication. When the record makes it clear that an issue was actually litigated and decided, but was incorrectly recorded in or inadvertently omitted from the judgment, the district court can correct the judgment under Rule 60(a), even where doing so materially changes the parties' positions and leaves one party to the judgment in a less advantageous position. That's 647 F.3d 188 at 198 to 200.

(Dkt. 22, July 6, 2015 Hr'g Tr. at 28-29 (some paragraphing altered, emphasis added)); *see also Olle v. Henry & Wright Corp.*, 910 F.2d 357, 363 (6th Cir. 1990) ("[T]he *Fifth Circuit* held that if an error affects the substantive rights of the parties, it must be corrected under the provisions of Rule 60(b)." (emphasis added)); *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 198-200 (*5th Cir. 2011*) ("The relevant inquiry under Rule 60(a) is not whether making the correction will have any effect on the parties' rights and obligations under the judgment. Most of the time, it will. . . . Whether a mistake is correctable under Rule 60(a) turns on whether the

11a

judgment reflects the actual intention of the court, not the shared understanding of the parties. . . . That the parties accurately comprehended the literal terms of the judgment does not establish that the judgment accurately conveyed the results of the court's adjudication."). ABPA's motion to retransfer fails to adequately address this Court's July 6, 2015 explanation, and in particular, *Rivera*.

ABPA does cite *Keeley v. Grider*, 590 F. App'x 557 (6th Cir. 2014), in support of its claim that a Rule 60(a) amendment is not available where the amendment affects the substantive rights of the parties. (*See* Pl.'s Mot. to Retransfer at 8.) But, in fact, the Court cited *Rivera* and *Olle* together for this rule of law: "Rule 60(a) cannot be used to alter the `substantive rights of the parties' *in a manner different from what was intended when the judgment was entered.*" *Keeley*, 590 F. App'x at 559 (emphasis added).

As this Court explained on July 6, 2015, Judge Mazzant's April 2, 2015 order, where he explicitly stated that his January 2015 transfer order directed the clerk's office to transfer the case here "immediately," is the best evidence of his intent when he entered his transfer order. The Court disagrees with ABPA that because Judge Mazzant issued two orders after his January 2015 transfer order (including one denying ABPA's motion to disqualify Judge Mazzant), his April 2, 2015 statement is incredible. (*See* Pl.'s Mot. to Retransfer at 9.) So Rule 60(a) is fully applicable here, and this Court was correct to amend Judge Mazzant's January 7, 2015 transfer order to reflect his contemporaneous intent as explicitly manifested on April 2, 2015.

12a

This Court has said enough on whether this case should be before it. The Court will not entertain any further motions on the propriety of the case being transferred to the Eastern District of Michigan. If ABPA continues to believe that this case should not be here, its recourse is in the Federal Circuit Court of Appeals. ABPA's Motion to Retransfer (Dkt. 23) is DENIED.

SO ORDERED.

SO ORDERED.
s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
Dated: August 17, 2015

13a

Filed 07/06/15

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

AUTOMOTIVE        BODY        PARTS ASSOCIATION,  Plaintiff,

v.

FORD GLOBAL TECHNOLOGIES, LLC, Defendant.

Case No. 15-cv-10137
Honorable Laurie J. Michelson

## ORDER DENYING MOTION TO DECLINE JURISDICTION [17]

This patent case has been transferred to this Court from the Eastern District of Texas. Currently pending before the Court is a motion by Defendant Ford Global Technologies, LLC to modify the protective order in this case. (Dkt. 9.) The hearing on the motion was scheduled for today, July 6, 2015. In the very first paragraph of Plaintiff Automotive Body Parts Association's response to that motion, ABPA says: "ABPA believes the transfer of this case was premature and is void and ABPA does not want to waive that position. Since the case transfer is void and this Court lacks jurisdiction over the case, this Court also lacks jurisdiction to modify the Stipulated Protective Order (SPO)." (Dkt. 14 ¶ 1.) ABPA has expanded on this position by filing a motion requesting that this Court decline jurisdiction "because the case transfer from the Eastern District of Texas (EDTX) to the Eastern District of Michigan (EDMI) was in

14a

violation of EDTX Local Rule CV-83(b) and therefore premature and void." (Dkt. 17 ¶ 1.) So, at the hearing, the Court found it necessary to resolve the threshold issue of whether the transfer was premature.

As articulated on the record at the hearing, this Court has jurisdiction over this case because (1) the case file has been transferred to this Court and Judge Amos L. Mazzant has declined jurisdiction; (2), in the first alternative, Judge Mazzant retained authority even after the file was transferred here to decide the limited issue of whether the transfer was premature, he ruled that the transfer was not premature, and the law-of-the-case doctrine justifies deferring to that finding; and (3), in the second alternative, this Court can sua sponte amend Judge Mazzant's January 2015 transfer order to reflect his intent at the time of the order under Rule 60(a) and his intent was for an immediate transfer as manifested in his April 2015 order. ABPA's motion to decline jurisdiction (Dkt. 17) is therefore DENIED.

ABPA is granted leave to file, within 14 days, a motion to retransfer or writ of mandamus. If ABPA seeks a writ of mandamus, this Court will likely stay this case pending a ruling by the appellate court. The hearing on the motion to modify the protective order is adjourned and will be rescheduled by separate order.

SO ORDERED.

s/Laurie J. Michelson
LAURIE   J.   MICHELSON   UNITED   STATES DISTRICT JUDGE
Dated: July 6, 2015

15a

Case No. 4:13-CV-00705.

AUTOMOTIVE BODY PARTS ASSOCIATION, v. FORD GLOBAL TECHNOLOGIES, LLC.

United States District Court, E.D. Texas, Sherman Division.

April 2, 2015.

Automotive Body Parts Association, Plaintiff, represented by <u>Robert Glenn Oake, Jr.</u>, Oake Law Office.

Ford Global Technologies, LLC, Defendant, represented by <u>Frank A Angileri</u>, Brooks & Kushman PC, <u>Amy C Leshan</u>, Brooks & Kushman PC, <u>Clyde Moody Siebman</u>, Siebman Burg Phillips & Smith LLP, <u>Linda D Mettes</u>, Brooks & Kushman PC & <u>Marc Lorelli</u>, Brooks & Kushman PC.

## MEMORANDUM OPINION AND ORDER

### AMOS L. MAZZANT, III, *District Judge*.

Pending before the Court are Plaintiff's Motion to ReTransfer Case and/or Court File (Dkt. #66), Plaintiff's Sealed Motion for Reconsideration of Order of Transfer (Dkt. #69), Plaintiff's Motion for Reconsideration of Order Denying as Moot Plaintiff's Motion to Supplement Evidence (Dkt. #70), Plaintiff's Motion to Vacate Order of Transfer (Dkt. #71), and Plaintiff's Second Motion for Reconsideration of Order of Transfer and Order Denying as Moot Plaintiff's Motion to Supplement Evidence (Dkt. #72). Having

16a

considered the relevant pleadings, the Court finds Plaintiff's motions should be denied.

## BACKGROUND

On November 7, 2014, the undersigned, then serving as a Magistrate Judge assigned to this case, signed a Report and Recommendation recommending Ford Global Technologies, LLC's ("Ford") motion to transfer venue be granted. Automotive Body Parts Association ("ABPA") timely served objections to the report on November 24, 2014. On December 19, 2014, the undersigned began performing his duties as a United States District Court Judge, assigned to the Sherman Division. On January 7, 2015, the docket was updated to reflect the case's reassignment from the undersigned in his role as a Magistrate Judge to the undersigned in his new role as a United States District Court Judge. Shortly following this reassignment, the undersigned, after considering all briefings on the motions, the Report and Recommendation, and all objections, filed a Memorandum Opinion and Order granting Ford's Motion to Transfer Venue (Dkt. #62). The Memorandum Opinion and Order contained the following footnote: "On November 7, 2014, the undersigned entered a report and recommendation in this case as the United States Magistrate Judge to whom this case was referred. This case is now assigned to the undersigned as the presiding United States District Judge, and this memorandum opinion and order is issued accordingly." *Id.* The Memorandum Opinion and Order, which directed the Clerk to transfer this case to the United States District Court for the Eastern District of Michigan, was entered on January

8, 2015. On January 14, 2015, the case was docketed in the Eastern District of Michigan.

Plaintiff filed its Motion to Re-Transfer Case and/or Court File (Dkt. #66) on January 20, 2015. On January 28, 2015, Plaintiff filed its Sealed Motion for Reconsideration of Order of Transfer (Dkt. #69). Plaintiff filed its Motion for Reconsideration of Order Denying as Moot Plaintiff's Motion to Supplement Evidence (Dkt. #70) on January 29, 2015. And on February 4, 2015, Plaintiff filed its Motion to Vacate Order of Transfer (Dkt. #71), as well as its Second Motion for Reconsideration of Order of Transfer and Order Denying as Moot Plaintiff's Motion to Supplement Evidence (Dkt. #72).

## LEGAL STANDARD

It is well established that "[o]nce the files in a case are transferred physically to the court in the transferee district, the transferor court loses all jurisdiction over the case, including the power to review the transfer." *Schwartz v. Curtis*, No. 4:07-CV-3494, 2008 WL 4467560, at *1 (S.D. Tex. Oct. 2, 2008) (quoting *Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1516-17 (10th Cir. 1991)). "The date the papers in the transferred case are docketed in the transferee court . . . . forms the effective date that jurisdiction in the transferor court is terminated," and this date "also forms the effective date that appellate jurisdiction in the transferor circuit is terminated; the transfer order becomes unreviewable as of that date." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1517 (10th Cir. 1991) (internal citations omitted); *see generally*, *In re Sw. Mobile Homes, Inc.*, 317 F.2d 65

(5th Cir. 1963) (per curiam) (holding district court lost jurisdiction once transfer was complete); 15 Fed. Prac. & Proc. Juris. § 3846 (4th ed.) ("When a motion for transfer . . . is granted and the papers are lodged with the clerk of the transferee court, the transferor court and the appellate court for the circuit in which that court sits lose jurisdiction over the case and may not proceed further with regard to it.").

## ANALYSIS

Both the Fifth Circuit and the Eastern District of Texas have previously addressed a court's jurisdiction over a case where the transfer of the case to another court has been completed. In a case where a petitioner moved for leave to file a petition for mandamus to require a district judge to vacate a transfer order, the Fifth Circuit held that "when the petitioner's motion for leave was filed in this Court, the transfer was complete and the District Court . . . had already lost jurisdiction." *In re Sw. Mobile Homes, Inc.*, 317 F.2d at 66. In that case, the District Judge, after hearing the motion to transfer, had advised the parties that the action would be transferred at that time. Three days after the hearing, a formal order of transfer was entered. The papers were received by and docketed in the transferee district court two days after the formal order was entered. Two days after the case had been docketed in the transferee court, petitioner filed its motion for leave to file a petition for mandamus. The Fifth Circuit noted that the petitioner had not seasonably moved for a stay within which to seek review of the transfer, and because the district court had already lost jurisdiction, it was "extremely doubtful" whether the Fifth Circuit

19a

still "ha[d] the power to compel the District Judge to vacate his order transferring the action." *Id.*

Similarly, the exact issue presented here was addressed in *Lands v. St. Louis Sw. R.R. Co.* The court in *Lands* granted a motion to transfer. After the case file had already been forwarded to the transferee jurisdiction, Plaintiff's counsel filed a motion to reconsider. The court held that "[t]he transfer has been made, the clerk has forwarded the file . . . and no stay was sought; thus, this court denies the motion for reconsideration." *Lands v. St. Louis Sw. R.R. Co.*, 648 F.Supp. 322, 325 (E.D. Tex. 1986).

The present case was docketed in the Eastern District of Michigan on January 14, 2015. As such, January 14, 2015 is the effective date that this Court's jurisdiction over the matter was terminated. However, none of Plaintiff's motions presently before the Court were timely filed prior to the January 14, 2015 change of jurisdiction.

ABPA did not file any motions to stay the transfer and indicated that in making that decision, it relied on a provision of Local Rule CV-83(b) (Dkt. #86 at 3). Local Rule CV-83(b) states that "[a]bsent an order of the court to the contrary, no sooner than the twenty-first day following an order of the court transferring the case to another district court or remanding it to the appropriate state court, the clerk shall transmit the case file to the directed court." E.D. Tex. Local Rule CV-83(b). This reliance on the local rule was misguided, as the undersigned's Memorandum Opinion and Order (Dkt. #62) concludes just such an order, directing the Clerk to transfer this case immediately to the United

20a

States District Court for the Eastern District of Michigan.

Local Rule CV-83(b) provides that "[i]f a timely motion for reconsideration of the order of transfer or remand has been filed, the clerk shall delay . . . transferring the file until the court has ruled on the motion for reconsideration." Alternatively, Ford "offered to stipulate to a stay of the proceedings in response to the ABPA's expressed intention to challenge the Transfer Order." (Dkt. #89 at 3). Had ABPA opted to timely file a motion to stay the transfer or a motion for reconsideration, the transfer of the jurisdiction to the Eastern District of Michigan would have at minimum been delayed long enough to consider such a motion. Instead, ABPA allowed the transfer of jurisdiction to occur before filing any motion with this Court.

The result of this case is straightforward. As was stated in *Lands*, "[t]he transfer has been made, the clerk has forwarded the file . . . and no stay was sought;" thus, this Court denies the motions before it. *Lands*, 648 F. Supp. at 325.

**CONCLUSION**

It is therefore ORDERED that Plaintiff's Motion to Re-Transfer Case and/or Court File (Dkt. #66) is hereby DENIED.

It is further ORDERED that Plaintiff's Sealed Motion for Reconsideration of Order of Transfer (Dkt. #69) is hereby DENIED.

21a

It is further ORDERED that Plaintiff's Motion for Reconsideration of Order Denying as Moot Plaintiff's Motion to Supplement Evidence (Dkt. #70) is hereby DENIED.

It is further ORDERED that Plaintiff's Motion to Vacate Order of Transfer (Dkt. #71) is hereby DENIED.

It is finally ORDERED that Plaintiff's Second Motion for Reconsideration of Order of Transfer and Order Denying as Moot Plaintiff's Motion to Supplement Evidence (Dkt. #72) is hereby DENIED.

Signed this 2nd day of April, 2015,

/s/_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

22a

Case No. 4:13-CV-705.

AUTOMOTIVE BODY PARTS ASSOCIATION, v. FORD GLOBAL TECHNOLOGIES, LLC.

United States District Court, E.D. Texas, Sherman Division.

January 7, 2015.

Automotive Body Parts Association, Plaintiff, represented by Robert Glenn Oake, Jr., Oake Law Office.

Ford Global Technologies, LLC, Defendant, represented by Frank A Angileri, Brooks & Kushman PC, Amy C Leshan, Brooks & Kushman PC, Clyde Moody Siebman, Siebman Burg Phillips & Smith LLP, Linda D Mettes, Brooks & Kushman PC & Marc Lorelli, Brooks & Kushman PC.

**MEMORANDUM OPINION AND ORDER**[1]

AMOS L. MAZZANT, III, District Judge.
Pending before the Court is Defendant Ford Global Technologies, LLC's Motion to Transfer Venue to the Eastern District of Michigan (Dkt. #37). After considering the motion, the responses, and the relevant pleadings, the Court finds the motion is granted.

**BACKGROUND**
The Automotive Body Parts Association ("ABPA") filed the present suit for declaratory judgment asserting originally that six design patents on automotive body repair parts owned by Ford Global Technologies, LLC

23a

("Ford") are "invalid and/or unenforceable under the doctrines of patent exhaustion and/or functionality and are not infringed by ABPA members" (Dkt. #1 at 3, ¶ 11). In its response to the motion to transfer, however, the ABPA indicated that it dropped three patents from this litigation without prejudice, and that the following three patents remain: D489299 (F-150 Exterior of Vehicle Hood); D496890 (F-150 Vehicle Grill); and D501685 (F-150 Vehicle Head Lamp) (Dkt. #41 at 1). After reviewing the amended complaint filed on October 3, 2014, by the ABPA, it appears that there are now only two remaining patents in this litigation: D489299 (F-150 Exterior of Vehicle Hood); and D501685 (F-150 Vehicle Head Lamp) (*See* Dkt. #48).

On August 13, 2014, Ford filed its motion to transfer to the Eastern District of Michigan (Dkt. #37). On September 2, 2014, the ABPA filed its response (Dkt. #41). On September 12, 2014, Ford filed its reply (Dkt. #43). On September 22, 2014, the ABPA filed its sur-reply (Dkt. #47).

## LEGAL STANDARD

Ford moves to transfer venue to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a), which permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice...to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an `individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v.*

24a

*Barrack*, 376 U.S. 612, 622 (1964)). The purpose of 28 U.S.C. § 1404(a) "is to prevent the waste `of time, energy and money' and `to protect the litigants, witnesses and the public against unnecessary inconvenience and expense...'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). As transfer of venue is not a matter of substantive patent law, case law from the Court of Appeals for the Fifth Circuit governs this motion. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I"). Once that threshold inquiry is met, the Fifth Circuit has held that "[t]he determination of `convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("Volkswagen II"). The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and

(4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id.*

The party seeking transfer of venue must show good cause for the transfer. *Volkswagen II*, 545 F.3d at 315. The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315. The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 313 & 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315.

## ANALYSIS

The first issue that the Court must determine is whether the suit could have been filed originally in the destination venue. *Volkswagen II*, 545 F.3d at 312. The ABPA does not dispute that the Eastern District of Michigan is a proper venue for this case. As this matter is not in dispute, Ford meets the threshold inquiry for a transfer of venue analysis.
Both parties address the weight that should be given to the ABPA's choice of the Eastern District of Texas as the forum that should resolve this dispute. However, Fifth Circuit law is clear that the plaintiff's choice of venue is not a factor in this analysis, but rather

contributes to the defendant's burden to show good cause for the transfer. *Volkswagen II*, 545 F.3d at 313 & 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). Thus, the Court will consider the ABPA's choice of the Eastern District of Texas in its consideration of Ford's burden to show that the Eastern District of Michigan is "clearly more convenient" than this district.

Ford argues that the ABPA brought the current suit against Ford, claiming its authority from a prior correspondence between Ford and New World International ("New World"), which resulted in assurances from New World that it would honor the design patents at issue. Ford asserts that the limited discovery thus far has revealed that New World had no intention of keeping its promise, and instead "colluded" with the ABPA to bring the present suit while representing to Ford that there was no justiciable controversy. Ford argues that filing an anticipatory declaratory judgment action is grounds for dismissal of an action, but at the very least should justify a transfer to the Eastern District of Michigan. The ABPA contends that this is an improper attempt to reargue declaratory judgment standing.

Although the venue factors set out by the Fifth Circuit are non-exclusive, the Court declines to consider this as a separate factor in its transfer analysis. The Court has already addressed the standing issues at length, and has asserted that it will reconsider the issues if necessary in a subsequent motion. Further, the issue here is not whether dismissal is appropriate, but rather

27a

if Ford has met its burden to demonstrate whether the Eastern District of Michigan is a "clearly more convenient" forum that the present judicial district. The Court will now turn to that analysis.

### A. Public Interest Factors

The Fifth Circuit applies four non-exclusive public interest factors in determining a § 1404(a) venue transfer question — (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or the application of foreign law.

#### 1. *The administrative difficulties flowing from court congestion*

In considering this factor, the speed with which a case can come to trial and be resolved may be a factor. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (citing *Gates Learjet Corp v. Jenson*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.")). The Federal Circuit has noted that this factor appears to be the most speculative, and case-disposition statistics may not always tell the whole story. *Id.*

The most recent statistics obtained by this Court for the 12-month period ending in June 30, 2014, indicate that the median time from filing to trial in civil cases in the Eastern District of Texas was 27.9 months, as compared to 28.4 months in the Eastern District of

28a

Michigan.[2] The median time from filing to disposition in the Eastern District of Texas was 9.0 months and 8.5 months in the Eastern District of Michigan. There is little difference in the median amount of time in which this case can come to trial and/or be resolved in either district.

Ford contends that resolution would be more efficient in the Eastern District of Michigan based on several of the other interest factors. The ABPA expresses a concern that in the Eastern District of Michigan, 8.7% of civil cases that are pending are over three years old, as compared to 5.4% of civil cases in the Eastern District of Texas. In addition, the ABPA notes that the Eastern District of Texas has patent rules and procedures for efficient processing of patent cases, and the Eastern District of Michigan does not, which may contribute to the ability of the Eastern District of Texas to resolve patent cases quickly. However, the issues in this case relate to claims that arise under the federal patent law, "for which there is uniformity nationwide," and both courts are equally equipped to address. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011). Further, there are many reasons why cases may remain pending for three years or more, which may or may not have to do with the congestion of the court itself as much as the individual requirements of the litigation and the unique needs of a case. Because there is little difference in the median time to trial in the Eastern District of Michigan from the present venue, the Court finds this factor is neutral.

#### 2. *The local interest in having localized interests decided at home*

29a

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Affinity Labs of Texas v. Samsung Electronics Co., Ltd.*, 968 F.Supp.2d 852, 855 (E.D. Tex. 2013) (citing *Volkswagen I*, 371 F.3d at 206)). The mere sale of "several" or "some" of the allegedly infringing products in a given district is not enough to shift this factor in favor of one party. *See In re TS Tech USA Corp*, 551 F.3d 1315, 1321 (Fed. Cir. 2008). The ABPA's argues that Ford sells more F Series trucks in Texas than in any other state; therefore, by implication, this judicial district has a localized interest in keeping repair parts for the F-150 truck available and affordable. However, the sale of Ford products in this district alone is not enough to shift this factor against transfer.

The ABPA is a Texas corporation with is principal and registered office and address in Houston, Texas, which is not in this judicial district (Dkt. #41 at 13 & Ex. 3 ¶¶ 10, 13). The headquarters of the ABPA are currently in Rhode Island, where the current executive director lives and maintains a home office. *Id.* at ¶ 13. The ABPA's officers and board members live throughout the United States, with two living near, but not in, this district. *Id.* at ¶¶ 2, 3. The ABPA also asserts that some proof will be required from New World, which is a member of the ABPA, and located in Irving, Texas, also not in this judicial district (Dkt. #41 at 3, Ex. 1 ¶ 3). The ABPA asserts that because New World is primarily a regional seller of automotive parts, it is likely that discovery will reveal that some of the automotive

30a

repair companies that received the accused parts and installed them on the vehicles are located in this district, and that the owner of the cars that were repaired live and purchased their vehicles in the Eastern District of Texas.

The only patent doctrines at issue in this litigation are the doctrines of invalidity based on functionality and patent exhaustion. This litigation is somewhat unique in that the ABPA is asserting associational standing to sue on behalf of its members, and it plans to use individualized proof from New World when necessary to establish certain factors. Infringement is not an issue in this case. Ford asserts that the Eastern District of Michigan has a greater local interest in this litigation because at the heart of this litigation is the design, advertising, and marketing of the two patents-in-suit. The two patents were both researched and designed, and decisions regarding advertising and marketing were made in the Eastern District of Michigan. The ABPA essentially argues that the design of the patents has nothing to do with the issues before the Court, and states that the most relevant evidence regarding sales and design of the accused products will come from New World, located in the Northern District of Texas.

The decision before the Court is whether the Eastern District of Texas (not the Northern District of Texas) or the Eastern District of Michigan has the greatest local interest in deciding this case. It is clear to this Court that the research, design, advertising decisions, and marketing decisions all occurred in the Eastern District of Michigan, giving that district the greatest local interest in deciding this dispute. The Eastern

31a

District of Texas lacks any meaningful connection to this litigation. This factor favors transfer.

### 3. The familiarity of the forum with the law that will govern the case

The parties do not dispute that both courts are familiar with the relevant law. The ABPA briefly asserts that the Eastern District of Texas is uniquely qualified to handle patent litigation, and has been one of the top two judicial districts in the country in terms of percentage of civil cases filed that are patent cases and average patent cases per active judge. While this may be true, this case arises under federal patent law, with which both districts are equally familiar and able to apply appropriately. The Court finds that this factor is neutral.

### 4. The avoidance of unnecessary problems in conflict of laws

As this is a patent case arising under federal law, there are no issues relating to conflict of laws. The court agrees with the parties that this factor is neutral.

### B. The Private Interest Factors

The Fifth Circuit also considers four non-exclusive "private" factors — (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of willing witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Volkswagen II*, 545 F.3d at 315.

32a

### 1. The relative ease of access to sources of proof

The first private interest factor is the relative ease of access to the sources of proof. *Volkswagen I*, 371 F.3d at 203. "The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (citing *Volkswagen II*, 545 F.3d at 316)). "The Federal Circuit has observed that `[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer,' and therefore the location of the defendant's documents tends to be the more convenient venue.'" *Id.* (citing *Genentech*, 566 F.3d at 1345). However, in this case infringement is not at issue, as noted by both parties, as the ABPA has essentially conceded the issue of infringement and does not bring an infringement claim. Thus, the Court will consider the location of the relevant documents at issue.

Ford contends that the design documents are central to the issues here, and "all of Ford's documents relating to design, development, marketing, advertising, research and sales of the relevant products are maintained in the Eastern District of Michigan." (Dkt. #37 at 8). Specifically, Ford states that to establish the design for each of the F-150 parts, a team of at least five Ford designers worked for two years to craft the precise shape, contour, angles, and dimensions of each individual part. *Id.* at Ex.1 ¶ 7. The process includes hand sketches, computer aided drafting, computer modeling, clay modeling, and prototype parts. *Id.* at ¶ 8. Further, the marketing and advertising decisions and

33a

market research was conducted by employees in Dearborn, Michigan. *Id.* at ¶ 13. Also in Michigan are employees that work on replacement parts and the patent prosecution of these patents, along with their accompanying documents. *Id.*

There are no sources of proof in the Eastern District of Texas. The ABPA asserts that the relevant tangible things are located in the Northern District of Texas, at New World in Irving, Texas (Dkt. #41 at 3). These items include the accused automotive repair parts and certain "performance parts" that may be relevant to the issue of functionality. *Id.* The ABPA also argues that most of the relevant documents in this case come from New World, and include letters that establish a justiciable controversy, documents regarding accused products, and documents evidencing a rise in the prices of parts related to Ford's design patents. *Id.* at 4.

The Court agrees with Ford that the bulk of the relevant evidence regarding the creation of the design and the patents is in Michigan. This non-electronic evidence of models and physical products are material evidence in Ford's defense of the ABPA's assertion of functionality, which is based on the designs created in Michigan. Further, there are absolutely no documents or other physical evidence located in the Eastern District of Texas. This factor favors transfer.

## 2. The availability of compulsory process to secure the attendance of witnesses

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen I*, 371 F.3d at 203. A court

34a

cannot compel nonparty witnesses to travel more than 100 miles, unless it is within the same state and will not cause the witnesses to incur substantial travel expenses. FED. R. CIV. P. 45(c)(3)(A)(ii), 45(c)(3)(B)(iii). Both parties allege a substantial number of nonparty witnesses and each party claims that its favored venue has subpoena power over a greater number of these witnesses.

Ford argues that its employees, as well as the employees of Ford Motor Company (which is not a party to this suit), are within the subpoena power of the Eastern District of Michigan, including the Ford employees and former employees that participated in the design and marketing of the F-150 parts, as well as the prosecuting attorneys (Dkt. #37 at 10). Ford specifically lists five party witnesses, and three nonparty witnesses within the subpoena power of the Eastern District of Michigan. The ABPA lists primarily nonparty witnesses from New World, which is technically not a party, but is integrally involved in this litigation. The ABPA lists five nonparty witnesses located in the Eastern District of Texas, and eleven other nonparty witnesses within the subpoena power of this Court. A transfer of venue analysis does not require that parties show with any degree of specificity the information of a potential witness, but rather only an allegation that the witness has relevant or important information. *Genentech*, 566 F.3d at 1343-44. Both parties have identified several witnesses with potentially relevant information within the subpoena power of their chosen venue, and it appears that slightly more are within the subpoena power of this Court. Thus, this factor weighs slightly against transfer.

### 3. The cost of attendance for willing witnesses

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 203. In *Volkswagen II*, the Fifth Circuit noted that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317. The Fifth Circuit established the "100-mile" rule to determine the convenience of the transferee district to the witnesses and parties. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. The "100-mile" rule applies because the Eastern District of Michigan is approximately 1,300 miles from Sherman, Texas. *See id.* When inconvenience would exist in either potential venue, merely shifting inconvenience from one party's witnesses to the other is insufficient to affect a transfer of venue analysis. *In re Google Inc.*, 412 F. App'x 295, 296 (Fed. Cir. 2011).

Ford argues that its willing witnesses would incur substantial expense from traveling and would disrupt Ford's ordinary business, which is a concern not shared by the ABPA. The ABPA argues that it has more nonparty witnesses that would be affected by the expense incurred from traveling than Ford. The ABPA asserts that because the nonparty portion of this factor

strongly weighs against transfer and the party portion is neutral, this factor weighs against transfer.

For purposes of this venue analysis, the Court will assume that the witnesses employed by Ford and Ford Motor Company are willing witnesses, as are the employees of New World and other members of the ABPA who are participants in this litigation. Each party argues that its witnesses would be greatly inconvenienced by the other party's chosen venue. However, Ford does argue, and this Court agrees, that requiring its witnesses to travel a great distance would disrupt its business. The ABPA does not share this concern, as it is an association composed of members, including New World, and it does not make, manufacture, or sell any products. This factor weighs only slightly in favor of transfer.

### 4. All other practical problems that make trial easy, expeditious, and inexpensive

Ford contends that because this case is in its early stages, no practicable problems exist that would deter this Court from transferring this litigation. The ABPA contends that Ford delayed in filing its motion to transfer, and as a result this Court has already considered the issues of associational standing and motions to quash depositions, and judicial economy will have been wasted by a transfer. The Court disagrees. While this Court has already considered the issues of associational standing, that issue is still open to be reconsidered by further briefing and could easily be handled by the Eastern District of Michigan at a later stage of litigation. Further, discovery has commenced in this case, but could easily be continued in a different

37a

forum. No claim construction order has been entered in the present case, and the parties agree that no claim construction is necessary or that a claim construction order in this case can be limited to the claim language and the drawings in the patents-in-suit. The parties further agree that many of the remaining issues are properly resolved at summary judgment, which has not yet occurred in this case. The Court finds that there has been no improper delay on the part of Ford or the ABPA, and that there are no practical problems that make trial easy, expeditious, and inexpensive in either forum. This factor is neutral.

## CONCLUSION

Public interest factor 2 — the local interest in having the case tried in Michigan — weighs in favor of transfer, while the remaining public interest factors are neutral. Private interest factor 1 — the ease of access to sources of proof — weighs in favor of transfer, and factor 3 — the cost of attendance for willing witnesses — weighs slightly in favor of transfer. Private interest factor 2 — the availability of compulsory process — weighs against transfer, and the remaining factor is neutral.

Ford has met its burden to demonstrate that the Eastern District of Michigan is clearly more convenient than the current forum for this litigation. The Eastern District of Texas has little connection with the present litigation, aside from a few potential customers who may or may not reside here, and whose testimony may or may not be relevant to the present case. On the other hand, the Eastern District of Michigan has a clear connection to the litigation as the principal place of

38a

business of Ford, the location where most of Ford's witnesses work and reside, the location of the majority of the documents relevant to this litigation, and the location where a large local interest in the outcome of this litigation is based. Transfer of this case to the Eastern District of Michigan will present no practical or case management problems, as this case is in its early stages.

Based on the foregoing, the Court finds that Defendant Ford Global Technologies, LLC's Motion to Transfer Venue to the Eastern District of Michigan (Dkt. #37) is hereby GRANTED. The Clerk is directed to transfer this case to the United States District Court for the Eastern District of Michigan.

Signed this 7th day of January, 2015,

/s/_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

## FootNotes

1. On November 7, 2014, the undersigned entered a report and recommendation in this case as the United States Magistrate Judge to whom this case was referred. This case is now assigned to the undersigned as the presiding United States District Judge, and this memorandum opinion and order is issued accordingly.

2. *See* Federal Court Management Statistics, June 2014, www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2014.aspx, accessed October 20, 2014.

39a

1/22/2016

United States Court of Appeals for the Federal Circuit

In re: AUTOMOTIVE BODY PARTS ASSOCIATION, *Petitioner*

2015-156

On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Michigan in No. 2:15-cv-10137-LJM-MJH, Judge Laurie J. Michelson.

ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Before PROST, *Chief Judge*, NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges*.

ORDER

Petitioner Automotive Body Parts Association filed a combined petition for rehearing. The petition was referred to the panel that heard the appeal, and thereafter was referred to the circuit judges who are in regular active service.
Upon consideration thereof,

IT IS ORDERED THAT:

The petition for panel rehearing is denied.
The petition for rehearing en banc is denied.

40a

FOR THE COURT

Date January 22, 2016

 /s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk of Court

41a

Filed 04/06/15

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS SHERMAN DIVISION

CIVIL ACTION NO. 4:13-CV-00705-ALM

AUTOMOTIVE BODY PARTS ASSOCIATION,
Plaintiff,

V.

FORD GLOBAL TECHNOLOGIES, LLC,
Defendant.

DECLARATION OF ROBERT G. OAKE,

1 .    My name is Robert G. Oake, Jr. I am an attorney at law in good standing with the State Bar of Texas and licensed to practice law in the State of Texas. I represent Automotive Body Parts Association in the above referenced cause. I have personal knowledge of the facts stated in this declaration, as more particularly set forth below.

2.    On January 14, 2015, I received a voicemail from Christine at the District Court in Plano. I still have the voicemail. The following is a true and correct transcription of the voicemail:

Hi Mr. Oake this is Christine with District Court in Plano. I'm calling about the Automotive Body Parts versus Ford Global Technologies case 4:13cv705 - the one that prematurely was transferred to Michigan. Um I talked to my manager and she said that that's OK

42a

even though the case is open up there the Judge will still handle any motions or filings here in this case. So, she said go ahead and file that motion to reconsider in the case, um and it will be ruled upon. If you have any questions, I'm at (214) 872-4800. OK, thank you. Bye Bye.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Date: April 6, 2015.

Robert G. Oake, Jr.
Attorney for ABPA